UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DEMARCUS K. THOMAS,<br>Plaintiff | CIVIL ACTION NO. 1:15-CV-00109;<br>SEC. P |
| VERSUS | CHIEF JUDGE DRELL |
| TIMOTHY KEITH, ET AL.,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

On January 21, 2015 *pro se* prisoner Demarcus K. Thomas ("Thomas") filed a complaint pursuant to 42 U.S.C. § 1983. Thomas is an inmate in the custody of the Louisiana Department of Corrections ("LA DOC"). Thomas was incarcerated at Winn Correctional Center ("WCC") in Winnfield, Louisiana at the time he filed his complaint.

Following an initial Report and Recommendation, the District Judge dismissed nearly all claims against all Defendants, but preserved Thomas' claims for denial of adequate medical care, which were referenced in Thomas' objection to the Report and Recommendation. (Doc. 11). The deprivation of medical care claims are raised against Medical Director Daniel Marr, Nurse Practitioner Richardson, Nurse Sherita Watson, and Nurse Bosch. Thomas seeks an order directing Defendants to provide him with medical treatment and monetary damages. (Docs. 1, 16).

In their Joint Motion for Summary Judgment, Defendants Marr, Richardson, Watson, and Bosch seek dismissal based on Thomas' failure to properly exhaust his administrative remedies, and that Thomas was not denied adequate medical

treatment by any of the named Defendants. (Doc. 48). Thomas filed an Opposition to Defendant's Joint Motion for Summary Judgment (Doc. 54), and filed his own Motion for Summary Judgment (Doc. 50).

Thomas states that the Administrative Remedy Procedure ("ARP") form provided to him did not have a section for the offender to state the relief he desires, but instead specifically asks for the complainant to provide who did what, where, when, and how. (Doc. 50). Thomas contends that he should not be held responsible for the form's shortcomings when the ARP does not require a statement of the relief requested. (Id.). Thomas attaches a copy of the standard ARP form as an exhibit to his Motion for Summary Judgment. (Doc. 52). Thomas also states that he filed an ARP (WNC-2015-753), wherein Defendants' acknowledged a failure to provide Thomas with his prescribed medication. (Doc. 54).

Thomas additionally contends that Defendants' have not introduced any documentation reflecting the days and times Thomas was administered the prescribed medication, though he withdrew that statement in his reply. (See id., doc. 56).

I. **Background**

On October 11, 2014, Thomas alleged that, while he was sleeping, he was stabbed multiple times by another inmate, resulting in life-threatening injuries. He states that as a result of the assault and his injuries, he required emergency surgery. (Doc. 10, pp. 12-13). He additionally states that he still feels like he is "catching

strokes or a heart attack" and that "medical" refused to give him any medication for pain or treatment of any kind. (Doc. 10, p. 13).

In ARP WNC-2014-934, dated October 11, 2014, and received on November 12, 2014, Thomas stated that he was asleep in his bed and woke up to an attack by another inmate. He additionally stated that he suffered life threatening injuries. (Doc. 48-4, p. 4). That ARP was rejected for insufficient information to warrant an investigation and that Thomas did not state the relief desired, and therefore officials could not proceed. Thomas was advised to complete and resubmit. (Doc. 48-4, p. 5). However, Thomas never resubmitted the ARP. (Doc. 48-4, p. 2). Thomas's ARP file does not contain any ARPs where he complains of a denial of medical care by Marr, Richardson, Watson, or Bosch, either after the October 11, 2014 assault or after sick call requests made on or after October 15, 2014, November 6, 2014, November 22, 2014, January 22, 2015, and March 10, 2015. (Doc. 48, p. 2).

On October 15, 2014, in his amended Complaint, Thomas alleged that he had reported to sick call with chest pain, headaches, and trouble breathing while sleeping. The nurse who saw him told him that if he could walk, nothing was wrong with him. (Doc. 16, p. 2/5).

On November 6, 2014, he made a sick call with a complaint of chest pain, heart pain, and trouble breathing while sleeping. He alleges that he actually died in his sleep. He went to the infirmary, but states that when he told Marr that he was having trouble breathing and died in his sleep, Marr just laughed at him and made him leave the infirmary. (Doc. 16, p. 3/5).

3

On November 22, 2014, Thomas states that he made a sick call for pain in his right arm. He was examined by Nurse Practitioner Richardson. He additionally complained that his heart and chest were hurting and that he was having trouble breathing. He states that Richardson told him that if he did not leave the infirmary that she would write him up. (Doc. 16, pp. 3-4/5).

On January 22, 2015, Thomas made a sick call complaining of nerve pain, chest pain, and trouble breathing. He states that Nurse Sherita Watson refused to provide treatment and sent Thomas back to his unit. (Doc. 16, p. 4/5).

On March 10, 2015, Thomas made a sick call complaining of chest and heart pain, trouble breathing, and nerve problems. He states that Nurse Bosch told him that she was tired of seeing his face and that nothing was wrong with him. (Doc. 16, p. 4/5).

In ARP WNC-2015-753, received June 8, 2015, Thomas complained that he had made an emergency sick call for chest pain on May 1, 2015, and was seen by a doctor and prescribed medication. He states that he did not receive one of the prescriptions for over a month. (Doc. 30, p. 26/401). In the first step response form, an official noted that medical documentation showed that the order for imipramine was not on the Medical Administration Record ("MAR") in May, but it was noted in the month of June. Additionally, the official noted that there was no documentation on file of Thomas's complaining of the medication being out, nor of any sick calls in regard to the matter. (Doc. 54, p. 5/6). In the second step response to Thomas' ARP dated December 14, 2015, an official noted that once medical staff discovered the

error regarding the imipramine prescription, a prescription was written and placed in Thomas' MAR. The official noted that there were no notations in the medical record where Thomas had experienced any ill effects due to not receiving the medication in a timely manner. (Doc. 54, p. 4/6).

Thomas complains that he still suffers from chest pains and has difficulty breathing, but Defendants refuse to treat him.

I. Law and Analysis

    A. Standards governing the Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[1]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty

---

[1] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

5

Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

### B. Thomas failed to exhaust available administrative remedies regarding his claims for denial of medical care.

Defendants contend that Thomas failed to exhaust his administrative remedies as to his claim regarding denial of medical care. Thomas contends the standard ARP form is defective and he therefore was unable to comply. (Doc. 50). Furthermore, Thomas contends that he did exhaust his remedies and referred specifically to ARP WNC-2015-753. (Doc. 54).

The law requires that an offender confined in prison must exhaust available administrative remedies before bringing an action regarding prison conditions under § 1983, or any other federal law. 42 U.S.C. § 1997e(a). "Exhaustion is a mandatory prerequisite to the filing of a suit by a prisoner with respect to prison conditions." Abbott v. Babin, 587 Fed.Appx. 116, 118 (5th Cir. 2014). "A properly exhausted claim is one which has 'complete[d] the administrative review process in accordance with the applicable procedural rules.'" Id. (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). A prisoner must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. Hemphill v. Inglese, 359 Fed. Appx. 537, 540 (5th Cir. 2010) (citing Woodford v. Ngo, 548 U.S. 81, 93-95 (2006)). Defendants bear the burden of showing that the offender

6

did not exhaust administrative remedies if they seek to avail themselves of this affirmative defense. Id. (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Defendants attached the ARP that Thomas filed following the October 11, 2014 stabbing incident. (Doc. 48-4, p. 4/29, WNC-2014-934). In that ARP, filed on November 12, 2014, Thomas mentions that he was stabbed and sustained life threatening injuries, but does not mention that he was denied medical treatment. That ARP was rejected due to insufficient information, and Thomas was asked to "complete and resubmit." (Doc. 48-4, p. 5/29). Thomas did not do so. (Doc. 48-4, p. 2/29). Thomas's ARP did not give prison officials notice of problems regarding his medical care, nor did it give them an opportunity to address any grievance he might have had regarding his medical care. Instead, his ARP solely motions the stabbing incident, and it did not specify the relief he desired. Furthermore, instead of pursuing the grievance remedy to its conclusion, as he is required to do, Thomas instead initiated this lawsuit. This constitutes a failure to exhaust his administrative remedies.

Thomas argues that he was unable to comply with the grievance procedure as the standard form was defective, since the form did not have a section where the offender can state the relief he desires. (Doc. 50). Under Section 1997e, a prisoner must exhaust the available administrative remedies, and "it is not for the courts to inquire whether administrative procedures "satisfy 'minimum acceptable standards' of fairness and effectiveness." Alexander v. Tippah County, Miss., 351 F.3d 626, 630 (5th Cir. 2003). Nonetheless, officials gave Thomas instructions on how to properly

7

complete the form and instructed him to resubmit it, yet he did not pursue his grievance further. As Thomas's initial grievance did not address his medical care, nor did he pursue the administrative remedy properly, Thomas did not exhaust his administrative remedies for a denial of medical care claim.

Thomas also references ARP WNC-2015-753, received June 8, 2015, where he claims that he did not receive his medication. (Doc. 54). However, the incident that Thomas refers to happened in May 2015, more than a year after he filed this lawsuit. Furthermore, Thomas has not shown that any of the named Defendants were involved in the alleged May 2015 incident. A state prisoner must exhaust available administrative remedies prior to filing suit, as the statute "plainly requires that administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending." Smith v. Olsen, 455 Fed.Appx. 513, 515-16 (5th Cir. 2011) (quoting Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (overruled by implication on other grounds)). Therefore, Thomas has not exhausted his administrative remedies.

### C. Defendants were not deliberately indifferent to Thomas' medical needs.

Thomas claims Defendants were deliberately indifferent to his medical needs. Even if Thomas had properly exhausted his administrative remedies, there is no genuine dispute as to any material fact.

Thomas is a convicted inmate. Therefore, his claim for inadequate medical care is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail, a plaintiff must

establish that the response to a prisoner's medical needs was sufficiently harmful to evidence deliberate indifference. See id. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). It occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 837-40 (1994). Furthermore, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson v. Upshur County, Tx., 245 F.3d 447, 459 (5th Cir. 2001).

The Court must balance the needs of prisoners against the needs of the penal institution in light of medical necessity, not desirability. Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981). The fact that a plaintiff does not believe his medical treatment is as good as it should be is not a cognizable complaint. Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Disagreement with the medical treatment does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); see also Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

Originally, Thomas stated that Defendants had not produced any documentation reflecting when Thomas was administered the prescribed medication. (Doc. 50). However, as noted in Defendants' response (Doc. 53), Thomas's medical

9

records, including MARs, have been filed in this case (Doc. 30)[2], and Thomas withdrew this assertion in his reply (Doc. 56). When a medication is administered to an inmate, the medical staff member administering the medication places their initials in the box next to the corresponding date and time of administration. (Doc. 53-1). The staff member may also indicate that the inmate did not show up at pill call by placing a number "2" on the MAR. A few of the MARs show that Thomas did not show up at pill call. (Doc. 53-1; Doc. 30-2, pp. 18, 20/363). From October 20, 2014 through November 4, 2014, MARs indicate that Thomas was administered Oxycodone 2 and Phenergan. (Doc. 30-2, pp. 21-24/363). From November 5, 2014 through November 24, 2014, Thomas was given Motrin 600 mg, often multiple times per day. (Doc. 30-2, p. 20/363). Following a sick call request, Thomas was seen on January 22, 2015, for nerve and breathing problems, was assessed, and recommended Tylenol as needed. (Doc. 30-2, pp. 328-30/363). From March 1, 2015 through March 15, 2015, he was prescribed IBU 400 mg, but MARs indicate that he did not show up for pill call on the evenings of March 2, 3, 6, 7, 8, 11, and 12. (Doc. 30-2, p. 18/363).

More generally, Thomas received medical treatment following the altercation with the other inmate. He was assessed by staff following the stabbing and sent via ambulance to Winn Parish Medical Center, and then subsequently sent to Rapides Regional Medical Center. (Doc. 30-2, pp. 59-60, 179-85, 193, 264/363). He was treated

---

[2] Thomas appeared to complain that he had not been provided with a copy of the MAR sheet, in its original form. However, the medical records, including the MARs, were filed with this Court and provided to Thomas. (See Doc. 30). Defendants were simply under the obligation to provide medical records and other pertinent documents, not the original documents themselves to Thomas. (See Doc. 17).

and discharged back to WCC and treated on the medical ward. (Doc. 30-2, p. 177, 199, 351/363). Following breathing problems, he was transported back to WPMC for evaluation. (Doc. 30-2, p. 56-58, 194-97, 351/363). Upon return to WCC, from October 20, 2014 through November 4, 2014, Thomas was monitored daily by WCC medical staff. (Doc. 30-2, pp. 21-22, 352-58/363).

Following a medical emergency sick call for difficulty breathing and chest pain on November 4, 2014, Thomas was again sent back to WPMC. (Doc. 30-2, pp. 50-55, 170-76, 349/363). The next times he filed sick call requests for complaints of chest pain and difficulty breathing, on November 6, 2014 and November 7, 2014, he was assessed, his vitals were taken, and he was given instruction by medical staff. (Doc. 30-2, pp. 41-43, 46-49, 265/363). Thomas filed a sick call request for nerve problems in his right arm and was assessed on November 26, 2014. (Doc. 30-2, pp. 39-40/363). Thomas submitted another sick call request on January 22, 2015 for nerve and breathing problems. Again, Thomas was assessed and treated with instructions to exercise his hand and take Tylenol as needed. (Doc. 30-2, pp. 328-30/363).

Two emergency sick calls were made on February 25, 2015 and March 10, 2015. Both times Thomas was assessed by medical staff. (Doc. 30-2, pp. 264, 319-30, 321-24/363). On March 18, 2015, Thomas made an emergency sick call request with complaints of chest pain. Thomas was assessed my medical staff, his lungs were clear, and respirations were even and unlabored. Thomas was noted to be non-compliant with medication and he was instructed to take Tylenol as needed every 4-6 hours. (Doc. 30-2, pp. 315-18/363). On April 22, 2015, the physician order sheet noted that

Thomas had been running hard for fifteen minutes when he fell and complained of left sided chest pain. He was examined and given a no physical exercise duty status and placed on overnight observation. (Doc. 30-2, pp. 264-65/363). Progress notes from the next day noted Thomas was doing well and ambulating in the hall, ate supper the prior night, and pulled his IV out with 100 ml left in the bag. He was allowed to go down the walk. (Doc. 30-2, p. 265/363).

As noted above, Thomas did not point to evidence in the record in support of his claim, instead relying on conclusory allegations. Although Thomas may disagree with Defendants' treatment of him, that disagreement is insufficient to state an Eighth Amendment violation. Thomas' medical records show that he was evaluated each time he had a medical complaint and there is no evidence that Defendants' were deliberately indifferent to his medical needs. Since Defendants' have established that there is no genuine issue of material fact which would preclude a summary judgment, Defendants' Motion for Summary Judgement should be granted.

## II. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 48) be GRANTED, that Plaintiff's Motion for Summary Judgment be DENIED (Doc. 50), and that Plaintiff's claims against Defendants be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with

the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___17th___ day of January, 2017.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge